Brent O. Hatch (5715)
bhatch@hjdlaw.com
Lara A. Swensen (8493)
lswensen@hjdlaw.com
HATCH, JAMES, & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363

Shane V. Cortesi (*pro hac vice pending*)
shane.cortesi@cortesilaw.com
The Law Office of Shane V. Cortesi
3200 West End Ave, Suite 500
Nashville TN 37203
Telephone: (615) 522-5318

*Attorneys for Plaintiff My Sweet Petunia, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MY SWEET PETUNIA, INC. <br><br> *Plaintiff,* <br><br> vs. <br><br> STAMPIN' UP! INC., <br><br> *Defendant.* | **COMPLAINT** <br><br> Case No. 2:18-cv-00796_____ <br><br> Judge Evelyn J. Furse |

Plaintiff My Sweet Petunia, Inc., by its attorneys, brings this Complaint against Defendant Stampin' Up! Inc. and hereby alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, specifically including 35 U.S.C. § 271.

### THE PARTIES

2.      My Sweet Petunia, Inc. ("Plaintiff" or "Petunia") is a corporation organized and existing under the laws of the State of Illinois, having its principal place of business at 310 Ridgeview Drive, Sherrard, Illinois 61281.

3.      On information and belief, Stampin' Up! Inc. ("Defendant" or "Stampin' Up") is a corporation organized and existing under the laws of the State of Utah, having a principal place of business at 12907 South 3600 West, Riverton, Utah 84065.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Stampin' Up because Stampin' Up is deemed to reside in this judicial district by virtue of being incorporated in the State of Utah. In addition, on information and belief, Stampin' Up has its principal place of business located within the judicial district. In addition, Stampin' Up has offered to sell and/or has sold the accused infringing products to customers located in the United States, including those based in the state of Utah.

6.      Venue is proper in this Court under 28 U.S.C. §§ 1391(c) and 1400(b).

## FACTUAL BACKGROUND

### Petunia's Patents-In-Suit

7.      Petunia's patents at issue in the instant case are U.S. Patent No. 9,731,531 ("the '531 Patent"), U.S. Patent No. 9,925,812 ("the '812 Patent"), and U.S. Patent No. 9,931,875 ("the '875 Patent") (collectively, the "Patents-in-Suit").

8.      Petunia founder Ms. Iliana Myska, a stay-at-home mother and Army veteran, is the sole inventor of the Patents-in-Suit and the sole employee of Petunia.

9.      The '531 Patent, titled "Craftwork Tools and Kits," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on August 15, 2017. The '531 Patent

is and remains valid and enforceable. Petunia is the owner by assignment from Ms. Myska of the entire right, title, and interest in and to the '531 Patent, including the sole and undivided right to sue for infringement. A true and correct copy of the '531 Patent is attached hereto as Exhibit 1.

10.     The '812 Patent, titled "Craftwork Tools and Kits," was duly and legally issued by the USPTO on March 27, 2018. The '812 Patent is and remains valid and enforceable. Petunia is the owner by assignment from Ms. Myska of the entire right, title, and interest in and to the '812 Patent, including the sole and undivided right to sue for infringement. The application that led to the '812 Patent, U.S. Patent Application Ser. No. 15/821,398, was a continuation of U.S. Patent Application Ser. No. 15/584,761, filed on May 2, 2017, now U.S. Patent No. 9,849,705, which is a continuation of U.S. Patent Application No. 15/424,600, filed on February 3, 2017, now the '531 Patent, which is a continuation of U.S. Patent Application No. 14/595,480, filed on January 13, 2015, now the U.S. Patent No. 9,597,909 ("the '909 Patent"). A true and correct copy of the '812 Patent is attached hereto as Exhibit 2.

11.     The '875 Patent, titled "Craftwork Tools and Kits," was duly and legally issued by the USPTO on April 3, 2018. The '875 Patent is and remains valid and enforceable. Petunia is the owner by assignment from Ms. Myska of the entire right, title, and interest in and to the '875 Patent, including the sole and undivided right to sue for infringement. The application that led to the '875 Patent, U.S. Patent Application Ser. No. 15/654,939, was a continuation of U.S. Patent Application No. 15/584,761, filed on May 2, 2017, now U.S. Patent No. 9,849,705, which is a continuation of U.S. Patent Application No. 15/424,600, filed on February 3, 2017, now the '531 Patent, which is a continuation of U.S. Patent Application No. 14/595,480, filed on January 13,

2015, now the '909 Patent. A true and correct copy of the '875 Patent is attached hereto as Exhibit 3.

12.      The '531 Patent, the '812 Patent, and the '875 Patent are generally directed to a novel stamping tool for craftwork that includes a base with gridlines, a workspace, two magnets that are attracted to ferromagnetic material disposed below the workspace, a widthwise rigid raised side portion bordering the workspace, a lengthwise rigid raised side portion bordering the workspace and disposed approximately 90 degrees to the widthwise rigid raised side portion, a widthwise ruler, a lengthwise ruler, a removable foam pad, and a cover portion with gridlines pivotably attached to the base.

13.      The inventions to which the Patents-in-Suit are directed enable a user to apply an ink stamp to a particular location on cardstock or other stampable substrate by placing the cardstock on the workspace against the widthwise and lengthwise rigid raised side portions, placing the magnets over the cardstock, placing the ink stamp on the interior face of the cover portion opposite the workspace, and moving the cover portion toward the workspace as one would turn a page of a book.

14.      Due to these unique features, even users with unsteady hands are able to make batches of identical homemade greeting cards and other card items in a short period of time using the commercial embodiment of the claims of the Patents-in-Suit, the "MOST INCREDIBLE STAMP TOOL INVENTED," abbreviated the "MISTI stamping tool."

15.      Launched from Ms. Myska's basement, the MISTI stamping tool was an immediate commercial success.  Since its launch, Ms. Myska's MISTI stamping tool has generated over $6 million in sales with very limited advertising, and was lauded as the "Best Hot Product" at the

2016 Craft and Hobby Association's MEGA Conference & Trade Show, the largest arts and crafts trade show in the world.

16.     The commercial success of the MISTI stamping tool drew the interest of several companies in the crafting industry, and American Crafts, L.C., Hampton Art, Inc. and Tonic Studios USA Inc., introduced their own version of the MISTI stamping tool in the United States; all three companies have either subsequently withdrawn their products or agreed to cease selling their products after Petunia sent cease and desist letters or initiated suit.

17.     Petunia consistently marked its MISTI stamping tool as "Patent Pending" on both the product packaging and product itself from about January 22, 2015, to March 20, 2017, the day before the '909 Patent issued.

18.     Since the issuance of the '909 Patent on March 21, 2017 and continuing until Petunia began virtually marking its MISTI stamping tool in March of 2018, Petunia marked its MISTI stamping tool with the '909 Patent serial number in compliance with 35 U.S.C. § 287.

19.     Since the issuance of the '531 Patent on August 15, 2017 and continuing until Petunia began virtually marking its MISTI stamping tool in March of 2018, Petunia marked its MISTI stamping tool with the '531 Patent serial number in compliance with 35 U.S.C. § 287.

20.     Since March of 2018, Petunia has virtually marked its MISTI stamping tool with a sticker that includes the word "Pat." and the website address https://mysweetpetunia.com, which contains a list of all issued patents covering the MISTI stamping tool, including the '909, '531, '875 and '812 Patents.

### Stampin' Up's Stamparatus

21.     Stampin' Up is a company in the business of manufacturing and selling paper craft

products through a network of independent sales consultants called demonstrators.

22.     On or before November 13, 2017, Stampin' Up began promoting and offering for sale a new stamp positioning tool called the Stamparatus (the "Stamparatus").  As shown in the Product Photographs attached hereto as <u>Exhibit 4</u>, the Stamparatus is a stamping tool that includes a base with gridlines, a workspace, two magnets that are attracted to ferromagnetic material disposed below the workspace, a widthwise rigid raised side portion bordering the workspace, a lengthwise rigid raised side portion bordering the workspace and disposed approximately 90 degrees to the widthwise rigid raised side portion, a widthwise ruler, a lengthwise ruler, a removable foam pad, and two clear cover portions with gridlines pivotably attached to the base.

23.     The                       Stampin'                       Up                       website, https://www.stampinup.com/ecweb/product/146276/stamparatus, describes the Stamparatus as a tool "created by stampers for stampers" and calls it a "must-have tool for all stampers."  The Stamparatus is intended to help "perfectly align stamp images, stamp multiples of the same project quickly and precisely, and get complete ink coverage."  *See* <u>Exhibit 5</u>.

24.     On information and belief, Stampin' Up was aware of Petunia's MISTI stamping tool before Stampin' Up began selling, and offering to sell, the Stamparatus in the United States.

25.     On November 14, 2017, Petunia sent Stampin' Up a cease and desist letter (the "First Cease and Desist Letter") informing Stampin' Up of the '531 Patent and requesting that Stampin' Up provide Petunia a sample of the Stamparatus.

26.     On December 14, 2017, Stampin' Up responded to the First Cease and Desist Letter taking the position that the Stamparatus did not infringe the '531 Patent and ignoring Petunia's request for a sample.

27.     On February 8, 2018, Petunia sent Stampin' Up another letter further clarifying its position that the Stamparatus infringes the claims of the '531 Patent and again requesting a sample of the product.

28.     On February 16, 2018, Stampin' Up unequivocally rejected the demand that it cease and desist sales of the Stamparatus in the United States and again ignored Petunia's request for a sample.

29.     On April 4, 2018, Petunia sent Stampin' Up a letter informing Stampin' Up of the issuance of the '875 and '812 Patents.

30.     Despite its knowledge of Petunia's patent rights, Stampin' Up, as of the date of filing of the Complaint, continues to promote, offer to sell and sell the Stamparatus and accessories for the Stamparatus in the United States as evidenced on its website.[1] See Exhibit 5.  On October 2, 2018, Stampin' Up published a new video ("Stamparatus Accessories by Stampin' Up!") on YouTube that describes not only how to use the Stamparatus for stamping, but also offers new accessories for sale with the Stamparatus.[2]

31.     Upon information and belief, Stampin' Up also sells the Stamparatus and accessories for the Stamparatus through its network of demonstrators, who receive a commission for selling the product.  Upon information and belief, Stampin' Up provides demonstrators with support, training, special events, and an online community to increase sales of Stampin' Up products, including the sales of the Stamparatus, and educate consumers about the ways in which Stampin' Up products can be used.

---

[1] Available at https://www.stampinup.com/ecweb/product/146276/stamparatus (last accessed September 26, 2018).
[2] *See* https://youtu.be/M4HHHVIfCWw (last accessed October 10, 2018).

32.     Stampin'                Up's                YouTube                channel, https://m.youtube.com/user/stampinupvideo/videos, includes videos demonstrating the use of the Stamparatus by persons who, upon information and belief, are agents of Stampin' Up.  As one example, Stampin' Up's instructional and promotional video entitled "5 Things to Know About the Stamparatus," which describes the product's features and instructs regarding recommended uses, has over 147,000 views.  The October 2, 2018 video, which states that the Stamparatus was designed "for stampers", demonstrates how to use multiple stamps with the product, and instructs viewers "To get your Stamparatus, contact your local demonstrator or go to www.stampinup.com."

33.     In the Product Packaging accompanying the Stamparatus, Stampin' Up also provides photographs and step-by-step instructions ("the Product Instructions") that instruct users on how to use the Stamparatus in a manner that infringes numerous claims of the Patents-in-Suit. See Exhibit 6.

34.     Upon information and belief, the Stamparatus is imported by Stampin' Up from China because the instructions accompanying the Stamparatus state the product is "Made in China."

35.     The Stampin' Up Stamparatus stamp positioning tool satisfies each and every limitation of at least the below-mentioned Claims of the '531, '812 and '875 Patents, either literally or under the doctrine of equivalents, as set forth below.

## COUNT I: DIRECT INFRINGEMENT OF THE '531 PATENT

36.     Petunia realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

37.     Stampin' Up has directly infringed and continues to directly infringe Claims 1-5 of the '531 Patent in violation of 35 U.S.C. § 271(a) by at least offering to sell, selling, and importing into the United States without authority, apparatuses for craftwork that include all of the limitations of at least Claims 1-5 of the '531 Patent, including, but not limited to, the Stamparatus stamp positioning tool.

38.     As shown in Exhibit 4, the Stamparatus includes all the features of Claims 1-5 of the '531 Patent either literally or under the doctrine of equivalents, including, but not limited to: (a) a rectangular base comprising a base width, a base length and a base periphery defining a perimeter of the base; (b) the base comprising a workspace configured to support a stampable substrate having a widthwise edge and a lengthwise edge; (c) widthwise and lengthwise rectangular rulers; (d) widthwise and lengthwise rigid raised side portions bordering the workspace and disposed 90 degrees relative to each other; (e) two rectangular, clear cover portions having interior surfaces configured to accept an ink stamp connected to the base by hinges to allow the cover portions to move 180 degrees from an open position to a closed position;  (f) the use of a foam pad to enable stamping of a crisp image; and (g) magnets and a ferromagnetic material below the workspace to hold a stampable substrate in place.  *See also* Exhibit 5 (noting that the product includes "2 magnets to hold the paper in place"; "Rulers on 2 sides for quick measuring"; "Multiple hinges for more placement options"; "1 foam mat for use with photopolymer"; and "1 base with grid"); Exhibit 6.

39.     All of the features of the '531 Patent enable users of the MISTI stamping tool to quickly, precisely and repeatedly apply consistent stamps to the user's cardstock or other stampable substrate.

40.   Despite its actual knowledge of Petunia's '531 Patent since no later than November 14, 2017, Stampin' Up has sold and continues to offer to and sell the accused product in deliberate disregard of Petunia's patent rights. As such, Stampin' Up has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '531 Patent, justifying an award to Petunia of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II: INDUCED INFRINGEMENT OF THE '531 PATENT

41.   Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

42.   By encouraging and instructing others to use the Stamparatus in a manner that Stampin' Up knew or should have known infringes at least Claims 6-20 of the '531 Patent, with the specific intent to bring about such acts of infringement, Stampin' Up has induced infringement of the '531 Patent in violation of 35 U.S.C. § 271(b).

43.   Use of the Stamparatus in accordance with the photographs and videos on the Stampin' Up website, the YouTube channel, and the Product Instructions directly infringes at least Claims 6-20 of the '531 Patent.  For example, with respect to Claim 7, the Product Instructions show a rectangular card with a widthwise edge and a lengthwise edge, and, with reference to provided figures, the Product Instructions state: "2. Put the paper on the Stamparatus (or on the foam mat for photopolymer stamps), lining it up in the corner (Fig. 8); 3. Place the stamp on the paper (Fig. 9).  4. To secure the stamp to the plate, close the plate over the stamp, press lightly, then lift up the plate (Fig. 10). . . . 6. Ink the stamp, then close the plate over the paper (Fig. 12)."

44.     Since at least as early as Stampin' Up's receipt of the First Cease and Desist Letter, Stampin' Up has had actual knowledge of the '531 Patent and knowledge that the Stamparatus and use thereof in accordance with Stampin' Up's instructions, infringes at least Claims 6-20 of the '531 Patent.

45.     Notwithstanding Stampin' Up's actual knowledge of the '531 Patent, Stampin' Up continues to promote the Stamparatus on its website and instructs users on how to use the Stamparatus in a way that infringes at least Claims 6-20 of the '531 Patent.

46.     Stampin' Up has engaged in these activities with the specific intent to cause acts which it knows or should know would constitute direct infringement of at least Claims 6-20 of the '531 Patent by such third parties, including users of the Stamparatus and Stampin' Up's demonstrators.

47.     Accordingly, Stampin' Up has and/or continues to actively induce infringement of the '531 Patent by at least encouraging and instructing persons located in the United States to use the Stamparatus in a manner that infringes at least Claims 6-20 of the '531 Patent under 35 U.S.C. § 271(b).

48.     Stampin' Up's past and/or ongoing inducement with specific intent to bring about such infringement and knowledge that infringement of at least Claims 6-20 of the '531 Patent will take place subjects Stampin' Up to liability as an indirect infringer for induced infringement.

### COUNT III: CONTRIBUTORY INFRINGEMENT OF THE '531 PATENT

49.     Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

50.     The Stamparatus stamp positioning tool offered for sale, sold and/or imported by Stampin' Up constitutes a material part of invention recited in at least Claims 6-20 of the '531 Patent.

51.     The Stamparatus stamp positioning tool offered for sale, sold and/or imported by Stampin' Up is not a staple article or commodity of commerce suitable for substantial non-infringing use.

52.     The Stamparatus has no substantial non-infringing uses, and is described by Stampin' Up as a tool "created by stampers for stampers" and a "must-have tool for all stampers."

53.     Moreover, at least as a result of having been placed on notice of the '531 Patent by Petunia's First Cease and Desist Letter, Stampin' Up knows that the Stamparatus is especially made or especially adapted for use in a manner that infringes at least Claims 6-20 of the '531 Patent as shown in Exhibits 4-7.

54.     Accordingly, Stampin' Up's activities of manufacturing, using, selling, offering to sell, importing and instructing users on how to use the Stamparatus contribute to direct infringement of at least Claims 6-20 of the '531 Patent by third parties in violation of 35 U.S.C. § 271(c).

## COUNT IV: DIRECT INFRINGEMENT OF THE '812 PATENT

55.     Petunia realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

56.     Stampin' Up has directly infringed and continues to directly infringe at least Claims 1-15, 17, and 21-29 of the '812 Patent in violation of 35 U.S.C. § 271(a) by at least offering to sell, selling, and importing into the United States without authority, apparatuses for craftwork that

include all of the limitations of at least Claims 1-15, 17, and 21-29 of the '812 Patent, including, but not limited to the Stamparatus.

57.     As shown in Exhibit 4, the Stamparatus includes all the features of at least Claims 1-15, 17, and 21-29 of the '812 Patent either literally or under the doctrine of equivalents, including, but not limited to: (a) a base comprising a base width, a base length and gridlines; (b) the base comprising a workspace configured to support a stampable substrate having a widthwise edge and a lengthwise edge; (c) lengthwise and widthwise rulers located on the base; (d) widthwise and lengthwise rigid raised side portions forming a corner having an angle of 90 degrees bordering the workspace; (e) two clear covers with gridlines and interior surfaces configured to accept an ink stamp that are pivotally connected to the base by hinges extending generally to the base length and the base width to allow the covers to pivot toward and away from the workspace; (f) the use of a foam pad to enable stamping of a crisp image; and (g) magnets and a ferromagnetic material below the workspace to hold stampable substrates in place.  *See also* Exhibit 5 (noting that the product includes "2 magnets to hold the paper in place"; "Rulers on 2 sides for quick measuring"; "Multiple hinges for more placement options"; "1 foam mat for use with photopolymer"; and "1 base with grid"); Exhibit 6.

58.     All of the features of the '812 Patent enable users of the MISTI stamping tool to quickly, precisely and repeatedly apply consistent stamps to the user's cardstock or other stampable substrate.

59.     Despite its knowledge of Petunia's '812 Patent since no later than April 4, 2018, Stampin' Up has sold and continues to sell the accused product in complete and reckless disregard of Petunia's patent rights. As such, Stampin' Up has acted recklessly and continues to willfully,

wantonly, and deliberately engage in acts of infringement of the '812 Patent, justifying an award to Petunia of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT V: INDUCED INFRINGEMENT OF THE '812 PATENT

60.     Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

61.     By encouraging and instructing others to use the Stamparatus in a manner that Stampin' Up knew or should have known infringes at least Claims 16, 18-20, and 30 of the '812 Patent, with the specific intent to bring about such acts of infringement, Stampin' Up has induced infringement of the '812 Patent in violation of 35 U.S.C. § 271(b).

62.     Use of the Stamparatus in accordance with the photographs and videos on the Stampin' Up website and YouTube channel and the Product Instructions directly infringes at least Claims 16, 18-20, and 30 of the '812 Patent.  For example, with respect to Claim 18, the Product Instructions show a rectangular card with a widthwise edge and a lengthwise edge, and, with reference to the provided figures, the Product Instructions state: "2. Put the paper on the Stamparatus (or on the foam mat for photopolymer stamps), lining it up in the corner (Fig. 8); 3. Place the stamp on the paper (Fig. 9).  4. To secure the stamp to the plate, close the plate over the stamp, press lightly, then lift up the plate (Fig. 10).  . . .  6. Ink the stamp, then close the plate over the paper (Fig. 12)."

63.     Since at least as early as Stampin' Up's receipt of Petunia's April 4, 2018 letter, Stampin' Up has had actual knowledge of the '812 Patent and knowledge that the Stamparatus and use thereof in accordance with Stampin' Up's instructions, infringes at least Claims 16, 18-20, and

30 of the '812 Patent.

64.     Notwithstanding Stampin' Up's actual knowledge of the '812 Patent, Stampin' Up continues to promote the Stamparatus on its website and instructs users on how to use the Stamparatus in a way that infringes at least Claims 16, 18-20 and 30 of the '812 Patent.

65.     Stampin' Up has engaged in these activities with the specific intent to cause acts which it knows or should know would constitute direct infringement of at least Claims 16, 18-20 and 30 of the '812 Patent by such third parties, including users of the Stamparatus and Stampin' Up's demonstrators.

66.     Accordingly, Stampin' Up has and/or continues to actively induce infringement of the '812 Patent by at least encouraging and instructing persons located in the United States to use the Stamparatus in a manner that infringes at least Claims 16, 18-20, and 30 of the '812 Patent under 35 U.S.C. § 271(b).

67.     Stampin' Up's past and/or ongoing inducement with specific intent to bring about such infringement and knowledge that infringement of at least Claims 16, 18-20, and 30 of the '812 Patent will take place subjects Stampin' Up to liability as an indirect infringer for induced infringement.

## COUNT VI: CONTRIBUTORY INFRINGEMENT OF THE '812 PATENT

68.     Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

69.     The Stamparatus stamp positioning tool offered for sale, sold and/or imported by Stampin' Up constitutes a material part of invention recited in at least Claims 16, 18-20, and 30 of the '812 Patent.

70.     The Stamparatus stamp positioning tool offered for sale, sold and/or imported by Stampin' Up is not a staple article or commodity of commerce suitable for substantial non-infringing use.

71.     The Stamparatus has no substantial non-infringing uses, and is described by Stampin' Up as a tool "created by stampers for stampers" and a "must-have tool for all stampers."

72.     Moreover, at least as a result of having been placed on notice of the '812 Patent by Petunia, Stampin' Up knows that the Stamparatus is especially made or especially adapted for use in a manner that infringes at least Claims 16, 18-20, and 30 of the '812 Patent as shown in Exhibit 4.

73.     Accordingly, Stampin' Up's activities of manufacturing, using, selling, offering to sell, importing and instructing users on how to use the Stamparatus contribute to direct infringement of at least Claims 16, 18-20 and 30 of the '812 Patent by third parties in violation of 35 U.S.C. § 271(c).

**COUNT VII: DIRECT INFRINGEMENT OF THE '875 PATENT**

74.     Petunia realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

75.     Stampin' Up has directly infringed and continues to directly infringe at least Claims 1-15, 17, and 21-29 of the '875 Patent in violation of 35 U.S.C. § 271(a) by at least offering to sell, selling, and importing into the United States without authority, apparatuses for craftwork that include all of the limitations of at least Claims 1-15, 17, and 21-29 of the '875 Patent, including, but not limited to the Stamparatus.

76.     As shown in <u>Exhibit 4</u>, the Stamparatus includes all the features of at least Claims 1-15, 17, and 21-29 of the '875 Patent either literally or under the doctrine of equivalents, including, but not limited to: (a) a base comprising a base width, a base length and gridlines; (b) the base comprising a workspace configured to support a stampable substrate having a widthwise edge and a lengthwise edge; (c) lengthwise and widthwise rulers located on the base; (d) widthwise and lengthwise rigid raised side portions forming a corner having an angle of 90 degrees and bordering the workspace; (e) two clear covers with gridlines and interior surfaces configured to accept an ink stamp that are pivotally connected to the base to allow the covers to pivot toward and away from the workspace; (f) the use of a foam pad to enable stamping of a crisp image; and (g) magnets and a ferromagnetic material below the workspace to hold stampable substrates in place.  *See also* <u>Exhibit 5</u> (noting that the product includes "2 magnets to hold the paper in place"; "Rulers on 2 sides for quick measuring"; "1 foam mat for use with photopolymer"; and "1 base with grid"); <u>Exhibit 6</u>.

77.     All of the features of the '875 Patent enable users of the MISTI stamping tool to quickly, precisely and repeatedly apply consistent stamps to the user's cardstock or other stampable substrate.

78.     Despite its knowledge of Petunia's '875 Patent since no later than April 4, 2018, Stampin' Up has sold and continues to sell the accused product in complete and reckless disregard of Petunia's patent rights. As such, Stampin' Up has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '875 Patent, justifying an award to Petunia of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII: INDUCED INFRINGEMENT OF THE '875 PATENT

79.   Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

80.   By encouraging and instructing others to use the Stamparatus in a manner that Stampin' Up knew or should have known infringes at least Claims 16, 18-20, and 30 of the '875 Patent, with the specific intent to bring about such acts of infringement, Stampin' Up has induced infringement of the '875 Patent in violation of 35 U.S.C. § 271(b).

81.   Use of the Stamparatus in accordance with the photographs and videos on the Stampin' Up website and YouTube channel and the Product Instructions directly infringes at least Claims 16, 18-20, and 30 of the '875 Patent.  For example, with respect to Claim 18, the Product Instructions show a rectangular card with a widthwise edge and a lengthwise edge, and, with reference to provided figures, the Product Instructions state: "2. Put the paper on the Stamparatus (or on the foam mat for photopolymer stamps), lining it up in the corner (Fig. 8); 3. Place the stamp on the paper (Fig. 9).   4. To secure the stamp to the plate, close the plate over the stamp, press lightly, then lift up the plate (Fig. 10).  . . . .6. Ink the stamp, then close the plate over the paper (Fig. 12)."

82.   Since at least as early as Stampin' Up's receipt of the April 4, 2018 letter, Stampin' Up has had actual knowledge of the '875 Patent and knowledge that the Stamparatus and use thereof in accordance with Stampin' Up's instructions, infringes at least Claims 16, 18-20, and 30 of the '875 Patent.

83.   Notwithstanding Stampin' Up's actual knowledge of the '875 Patent, Stampin' Up continues to promote the Stamparatus on its website and instructs users on how to use the

Stamparatus in a way that infringes at least Claims 16, 18-20, and 30 of the '875 Patent.

84.     Stampin' Up has engaged in these activities with the specific intent to cause acts which it knows or should know would constitute direct infringement of at least Claims 16, 18-20, and 30 of the '875 Patent by such third parties, including users of the Stamparatus and Stampin' Up's demonstrators.

85.     Accordingly, Stampin' Up has and/or continues to actively induce infringement of the '875 Patent by at least encouraging and instructing persons located in the United States to use the Stamparatus in a manner that infringes at least Claims 16, 18-20, and 30 of the '875 Patent under 35 U.S.C. § 271(b).

86.     Stampin' Up's past and/or ongoing inducement with specific intent to bring about such infringement and knowledge that infringement of at least Claims 16, 18-20, and 30 of the '875 Patent will take place subjects Stampin' Up to liability as an indirect infringer for induced infringement.

## COUNT IX: CONTRIBUTORY INFRINGEMENT OF THE '875 PATENT

87.     Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

88.     The Stamparatus stamp positioning tool offered for sale, sold and/or imported by Stampin' Up constitutes a material part of invention recited in at least Claims 16, 18-20, and 30 of the '875 Patent.

89.     The Stamparatus stamp positioning tool offered for sale, sold and/or imported by Stampin' Up is not a staple article or commodity of commerce suitable for substantial non-infringing use.

90.     The Stamparatus has no substantial non-infringing uses, and is described by Stampin' Up as a tool "created by stampers for stampers" and a "must-have tool for all stampers."

91.     Moreover, at least as a result of having been placed on notice of the '875 Patent by Petunia, Stampin' Up knows that the Stamparatus is especially made or especially adapted for use in a manner that infringes at least Claims 16, 18-20, and 30 of the '875 Patent as shown in Exhibit 4.

92.     Accordingly, Stampin' Up's activities of manufacturing, using, selling, offering to sell, importing and instructing users on how to use the Stamparatus contribute to direct infringement of at least Claims 16, 18-20, and 30 of the '875 Patent by third parties in violation of 35 U.S.C. § 271(c).

## WILLFUL PATENT INFRINGEMENT

93.     Defendant's infringement of the Patents-in-Suit as set forth in Counts I - IX has directly caused substantial monetary harm to Petunia in an amount to be proven at trial, including lost profits on the sale of Petunia's MISTI stamping tool and accessories specially designed for use with the MISTI stamping tool, such as replacement magnets and carrying bags.

94.     Defendant's infringement of the Patents-in-Suit as set forth in Counts I - IX has caused Petunia damages for which Petunia has no adequate remedy at law, including but not limited to price erosion relating to Petunia's sales of its MISTI stamping tool product, and will continue to damage Petunia unless enjoined by this Court.

95.     On information and belief, Defendant's infringement of the Patents-in-Suit has been willful, deliberate, and with full knowledge that the sale, offer for sale, use and importation into the United States of the Stamparatus infringes at least Claims 1-20 of the '531 Patent, at least

Claims 1-30 of the '812 Patent, and at least Claims 1-30 of the '875 Patent, justifying the award to Petunia of damages three times the amount found or assessed, in accordance with 35 U.S.C. § 284.

96.      Defendant has sold and continues to sell the Stamparatus despite knowledge of the Patents-in-Suit and Petunia's threats of infringement.

97.      Defendant's willful infringement of the Patents-in-Suit renders this an exceptional case, justifying an award to Petunia of its reasonable attorney fees in accordance with 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Petunia respectfully prays for judgment in its favor granting the following relief:

(a)      A finding that Defendant has directly infringed, induced others to infringe, and/or contributorily infringed one or more claims of the Patents-in-Suit;

(b)      An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Petunia for Defendant's infringement of one or more claims of the Patents-in-Suit, including both pre-judgment and post-judgment interest and costs as fixed by the Court and lost profits on the MISTI stamping tool and accessories;

(c)      A finding that Defendant's infringement of one or more claims of the Patents-in-Suit has been willful;

(d)      An increase in the damages to be awarded to Petunia of three times the amount found by the jury or assessed by the Court;

(e)      A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, and a corresponding award of Petunia's reasonable attorney fees incurred in connection with the litigation;

(f)      An order permanently enjoining Defendant and its respective officers, agents, servants, employees, representatives, independent contractors, attorneys, licensees, successors, and assigns, and those persons in active concert or participation with any of them, from directly infringing, contributorily infringing, and inducing the infringement of the Patents-in-Suit, including making, using, offering to sell, or selling in the United States, or importing into the United States Defendant's Stamparatus stamp positioning tool;

(g)      In the event a permanent injunction preventing future acts of infringement is not granted, an order requiring Defendant to pay to Petunia an ongoing royalty for its continued infringement with periodic accountings; and

(h)      Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Petunia hereby demands a trial by jury on all issues so triable.

DATED this 11th day of October, 2018.

By:      */s/ Lara A. Swensen*
Brent O. Hatch
Lara A. Swensen
**HATCH, JAMES & DODGE, P.C.**

Stephan R. Wright
Shane V. Cortesi
**THE LAW OFFICE OF SHANE V. CORTESI**

*Counsel for Plaintiff My Sweet Petunia*